UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL MALDONADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-cv-1954 |
| v. | ) | |
| | ) | |
| P.O. VINCENT STINAR, | ) | Hon. Marvin E. Aspen |
| P.O. MICHAEL GLINES, individually, | ) | |
| and THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us are two post-trial motions filed by Plaintiff Miguel Maldonado.[1] Plaintiff first asks us to alter or amend our February 1, 2010 order granting partial summary judgment for the Defendants in this case. Plaintiff also seeks relief from the jury's November 19, 2010 verdict in favor of the Defendants and requests that we vacate the final judgment and grant him a new trial. For the reasons stated below, we deny both motions.

---

[1] Citing Rule 11 and 28 U.S.C. § 1927, the Defendants informally request that we sanction Plaintiff for filing an "improper, borderline unethical post–trial motion[]" that is frivolous and a "waste of the court's time." (Resp. at 2, 19–20.) We do not believe that Plaintiff has "[multiplied] the proceedings . . . unreasonably [or] vexatiously", as required by 28 U.S.C. § 1927. The Defendants have also failed to comply with the Rule 11 requirement that "[a] motion for sanctions must be made separately from any other motion[.]" Fed. R. Civ. P. 11(c)(2). For these reasons, sanctions are not appropriate.

-1-

# I. BACKGROUND

Plaintiff brought a three-count second amended complaint against Defendants Vincent Stinar, Michael Glines, Lenny Pierri, and the City of Chicago. (Dkt. No. 52.) The individual Defendants are members of the Chicago Police Department.[2] The second amended complaint alleged that the Defendants falsely arrested Plaintiff in violation of the Fourth Amendment (Count I) and Illinois law (Count III), and that the Defendants' unreasonably searched Plaintiff and his vehicle (Count II). (*Id.* at 3–5.) Plaintiff seeks relief from our grant of summary judgment on Counts I and III (Dkt. No. 167) and the jury's verdict in favor of the Defendants on Count II (Dkt. No. 169). In support of his motion to reconsider our summary judgment order, Plaintiff points to alleged inconsistencies in the Defendants' deposition and trial testimony. (Dkt. No. 167 at 2–4.) In support of his motion for a new trial, Plaintiff points to Defense counsel's alleged misconduct in relying upon a photograph of the arrest scene not admitted in to evidence in her closing argument. (Dkt. No. 169 at 4–8.) We briefly set out the facts pertinent to each motion.

## A.   Defendants' Testimony

Prior to trial, Plaintiff deposed Officer Stinar regarding his arrest and search of Plaintiff and his vehicle. (Stinar Dep.) At his deposition, Officer Stinar testified that the arrest stemmed in part from an anonymous tip regarding a gun in a vehicle with the same license plate as Plaintiff's. (Stinar Dep. at 35–36.) Officer Stinar further stated that when Plaintiff exited his vehicle, Stinar recognized him as a gang affiliate whom he had previously observed at the scene of a gang-related shooting. (*Id.* at 25–30.) He described, *inter alia*, how he approached Plaintiff,

---

[2] Our grant of partial summary judgment on Plaintiff's false arrest claims disposed of all Plaintiff's claims against Officer Pierri. As such, he is no longer a party to this case.

(*Id.* at 40–47), arrested him, (*Id.* at 51–54), and searched his vehicle. (*Id.* at 51–62.) Officer Stinar also stated that, during the search, he noticed that Plaintiff clearly had children based on the fact that the car had toys and car seats in it. (*Id.*)

On February 1, 2010, we granted the Defendants' motion for summary judgment on Plaintiff's federal and state false arrest claims (Counts I and III). (Dkt. No. 92 at 16.) In finding that the officers had sufficient probable cause to arrest Plaintiff, we relied on three factors: 1) the anonymous tip identifying Plaintiff as a Hispanic male, physically describing his vehicle and license plate number, and stating that he had a gun; 2) the location of Plaintiff's vehicle in a neighborhood known to be heavily gang-infested; and 3) Officer Stinar's apparent recognition of Plaintiff as a gang affiliate. (*Id.* at 8–12.) On August 3, 2010, we denied Plaintiff's request to revisit our summary judgment order. (Dkt. No. 143.)

On November 18, 2010, a jury trial commenced on the remaining count of unreasonable search of Plaintiff's vehicle (Count II). (Dkt. No. 155.) During trial, Officer Stinar again testified about the search, stating that Plaintiff gave him permission to search his vehicle, (11/18/10 Trial Tr. at 59–60), that his belief that there was a weapon in the car rapidly diminished, (*Id.* at 59, 75, 78–79), that the vehicle was a family van, (*Id.* at 60), and that he had a friendly conversation with Plaintiff after the search. (*Id.* at 70–71.)

**B.     Photograph of the Scene**

Shortly before trial, Defense counsel obtained a photograph of the building and surrounding area where the arrest and search had occurred. (Resp., Ex. A ¶¶ 12–14.) Although the parties dispute whether Defense counsel disclosed the actual intended use for the photograph (*Id.* at ¶ 19; Aff. of Julie Owen at ¶ 5), they agree that Defense counsel showed the photograph to

Plaintiff's counsel before using it as a demonstrative exhibit at trial. (Resp., Ex. A ¶ 13; Aff. of Julie Owen at ¶ 3.) The photograph was not admitted as evidence, but the parties concur that Plaintiff's counsel did not object to Defense counsel's use of the photograph during her closing argument and that Plaintiff's counsel in fact referred to the photograph in her rebuttal. (11/18/10 Trial Tr. at 42–44; 11/19/10 10 a.m. Trial Tr. at 7–9; 11/19/10 12 p.m. Trial Tr. at 3.)

During their deliberations, the jury requested to see the photograph. (11/19/10 12 p.m. Trial Tr. at 2.) In denying that request, the Court instructed the jury as follows: "[Y]ou request a picture of the building. That picture is not in evidence. Although it was used for demonstrative purposes, it is not in evidence and I cannot give it to you." (*Id.* at 5.) Later that same day, the jury found the Defendants not liable on the remaining count of unreasonable search of Plaintiff's vehicle and the Court entered a final judgment for the Defendants. (Dkt. Nos. 157 & 164.)

## II. ANALYSIS

### A. Plaintiff's Motion to Reconsider the Summary Judgment Order

Plaintiff asks us to reconsider our order granting summary judgment for the Defendants on Counts I and III. (Dkt. Nos. 92 & 167.) The Federal Rules of Civil Procedure provide two avenues through which litigants may seek reconsideration of orders by the district court. Any motion that "challenges the merits of the district court's decision . . . must fall under either Rule 59(e) or Rule 60(b)." *U.S. v. Deutsch,* 981 F.2d 299, 300 (7th Cir. 1992); *Starr v. Levin*, No. 02 C 2258, 2002 WL 31664496, at *1 (N.D. Ill. Nov. 24, 2002).

To succeed on a Rule 59(e) motion, the moving party must present newly discovered evidence, point out an intervening change in controlling law, or clearly establish that the court committed a manifest error of law or fact. *See Caisse Nationale de Credit Agricole v. CBA*

*Indus., Inc.,* 90 F.3d 1264, 1269–70 (7th Cir. 1996); *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.,* 762 F.2d 557, 561 (7th Cir. 1985). Notably, "reconsideration is appropriate in very limited circumstances[.]" *BP Amoco Chem. v. Flint Hills Res., LLC,* 489 F. Supp. 2d 853, 856 (N.D. Ill. 2007); *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191–92 (7th Cir. 1990); *see also Hickory Farms, Inc. v. Snackmasters, Inc.,* 509 F. Supp. 2d 716, 719 (N.D. Ill. 2007) ("Reconsideration is appropriate, generally speaking, only when the Court overlooked or misunderstood something."). Rule 59(e) must also be invoked within twenty-eight days of the entry of the judgment. Fed. R. Civ. P. 59(e); *Swanigan v. Argent Mortgage Co.*, No. 10 C 1039, 2010 WL 4636699, at *1 (N.D. Ill. Nov. 8, 2010). Where a motion to alter or amend is served more than twenty-eight days after the entry of the judgment, "it falls under Rule 60(b)." *Deutsch*, 981 F.2d at 301; *Najieb v. William Chrysler-Plymouth*, No. 01 C 8295, 2003 WL 21058324, at *1 (N.D. Ill. May 9, 2003).

Because the summary judgment order Plaintiff asks us to reconsider was entered on February 1, 2010 (Dkt. No. 92), and Plaintiff did not file the present motion until December 14, 2010 (Dkt. No. 167), we review Plaintiff's request under the standard for Rule 60(b). Rule 60(b) is similar to Rule 59(e) in that it enables a party to seek relief from a court's order. *Starr*, 2002 WL 31664496, at *1. Rule 60(b), however, "is considerably narrower." *U.S. v. Manville Sales Corp.*, No. 88 C 630, 2005 WL 526695, at *2 (N.D. Ill. Mar. 2, 2005). Rule 60(b) identifies six grounds under which a motion to alter or amend may be brought. A court may grant relief only under the particular circumstances listed in the rule, including the movant's discovery of new evidence "that, with reasonable diligence, could not have been discovered in time" to seek relief under Rule 59. Fed. R. Civ. P. 60(b)(2); *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51

F.3d 746, 749 (7th Cir. 1995).  It is "well-established" that Rule 60(b) relief is "an extraordinary remedy and is granted in only exceptional circumstances."  *Harold Washington Party v. Cook Cnty, Ill. Democratic Party*, 984 F.2d 875, 879 (7th Cir. 1993); *Nodal Sys. Corp. v. Burke*, No. 00 C 2392, 2001 WL 664394, at * 2 (N.D. Ill. June 13, 2001).

Plaintiff contends that relief is warranted because "new evidence" surfaced at trial in the form of "inconsistent testimony by Officer [sic] Stinar and Glines."  (Dkt. No. 167 ¶ 4.)  The alleged inconsistency is that Officer Stinar testified "at his deposition that he 'immediately recognized' Miguel Maldonado as a 'gang affiliate,'" but later testified at trial that "Maldonado was friendly and social with him, that he gave consent to search his vehicle, and that he seemed like a family man."[3]  (*Id.* ¶¶ 5, 8.)  This inconsistency, Plaintiff contends, impacts "this Court's summary judgment analysis of whether the Defendant officers had probable cause to arrest" him.  (*Id.* ¶ 6.)  Plaintiff asserts that the inconsistency undermines the Defendants' credibility and their bases for probable cause.  Because the Defendants' story changed, Plaintiff asserts that a jury should examine the dismissed claims.  (*Id.* ¶¶ 11–14.)  The Defendants respond by stating that they were barred from presenting testimony about Plaintiff's gang affiliation by Plaintiff's own motion *in limine* (Resp. at 8), and that the two sets of testimony are "in no way inconsistent." (*Id.* at 10.)

After reviewing the deposition and trial transcripts, we do not view them as inconsistent. In both instances, Officer Stinar testified, first, that the nature of the call motivated his reactions

---

[3] Plaintiff asserts and then abandons a similar argument regarding inconsistent statements made by Officer Glines.  (Resp. at 11; Dkt. No. 185 at 2 n.1.)  Since Plaintiff, apparently, never deposed Officer Glines and because Plaintiff abandons the argument, we do not address any alleged inconsistent statements made by Officer Glines. (*See* Resp. at 11; Dkt. No. 185 at 2 n.1.)

at the scene.[4]  Second, Officer Stinar testified that Plaintiff responded to the officers' approach by giving Officer Stinar permission to search the vehicle.[5]  Third, he testified that the car was full of things evidencing that Plaintiff had a family.[6]  Finally, Officer Stinar stated that he believed the call to be a "nonsense call."[7]

We do not see how these two sets of testimony are inconsistent.  It is not necessarily inconsistent to state that someone is a gang affiliate, having been seen around other gang members and at the scene of a gang-related shooting, and then later assert that the same person has a family.  Moreover, even if the two sets of testimony are inconsistent, whatever slight differences exist can be attributed to two things:  1) the grant of Plaintiff's motion *in limine*, which barred the Defendants from testifying at trial about Plaintiff's alleged gang affiliation (Dkt. No. 145); and 2) the absence at trial of detailed pre-arrest facts because the only issue remaining for the jury to decide was the reasonableness of the search.  (11/18/10 10 a.m. Trial Tr. at 56:16–17.)  It is well-established that the relevant moment for determining whether probable cause exists is the moment at which the arrest occurs.  *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) ("A police officer has probable cause to arrest a person if, *at the time of the arrest*, the 'facts and circumstances within the officer's knowledge . . . are sufficient

---

[4] Stinar Dep. at 46:8–9 ("Q.: Why did you have your weapon drawn?  A.: For the nature of the call, person with a gun.  For my safety, I had my gun out."); 11/18/10 Trial Tr. at 59:18–20 ("Q.: So, if you started to believe there was no weapon inside the vehicle, why did you search it?  A.: Just because of the nature of the call . . .").

[5] Stinar Dep. at 52–53 ("A.: . . . I kept saying, you know, someone called saying you have a gun and gave the license plate.  Q.: Did he say anything in response to that?  A.: He said, 'There is no gun in here.  Go head and check.'"); 11/18/10 Trial Tr. at 59:4–10 ("Q.: So what happened after you got to the body shop?  A.: . . . I told him that we had received a call that he had a gun inside that vehicle.  Q.: And how did he respond to you?  A.: Surprised, calm, and gave me permission to search his vehicle.").

[6] Stinar Dep. at 56:20–23 ("A.: . . . the car was full of stuff.  You could tell that he has children or some kind—there was toys and car seats and food and everything all over the place."); 11/18/10 Trial Tr. at 60:13–24 ("Q.: So, can you tell me about the condition of the minivan when you approached it?  A.: I knew that obviously, children—it's a family van.  You can see child seats in there. . . . it was a family van, a lot of toys around, kids around, I started believing he wouldn't keep a gun inside there.").

[7] Stinar Dep. at 70:5–6; 11/18/10 Trial Tr. at 48:18–19.

to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'") (emphasis added) (internal citations omitted). We do not find that any statements made by Officer Stinar at trial undermine his deposition testimony that upon seeing Plaintiff he immediately recognized him as a gang affiliate—a fact that substantially contributed to our conclusion that there was probable cause. (*See* Dkt. No. 92.) Nothing upsets our prior conclusion that he remained under that belief at the time of the arrest. Furthermore, nothing in the trial transcript suggests that Officer Stinar's deposition statements were false or fabricated; rather, we reiterate that he was prevented from testifying in detail about the events prior to the search or his recognition of Plaintiff as a gang affiliate. Under the circumstances, the two sets of testimony could not be wholly consistent on every point. But having failed to identify any significant inconsistencies, our probable cause analysis remains the same and we will not revisit the issue. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1270 (a Rule 60(b) motion "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."); *see also Kaplan,* 2009 WL 1940789, at *1.

**B.      Plaintiff's Motion for Relief from the Final Judgment and for a New Trial**

In his second motion, Plaintiff moves to vacate the final judgment entered in the wake of the jury verdict and asks for a new trial pursuant to Rules 59(a) and Rule 60(b)(3). Motions for a new trial under Rule 59(a) require the court to determine "whether the verdict is against the weight of the evidence . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the party moving." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (internal

citations omitted); *Golden v. City of Chi.*, No. 07 C 6928, 2009 WL 3152359, at *4 (N.D. Ill. Sept. 28, 2009). Normally, "[t]he court is required to give significant deference to the jury's verdict." *Golden*, 2009 WL 3152359, at *4. (citing *Farfaras v. Citizens Bank & Trust Chi.*, 433 F.3d 558, 566 (7th Cir. 2006)). Where there are simple issues and highly disputed facts, even "greater deference should be afforded the jury's verdict." *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995); *Ingersoll Cutting Tool Co. v. Iowa Midland Supply Inc.*, No. 06 C 00845, 2010 WL 2011946, at *3 (N.D. Ill. May 19, 2010). The decision to grant a Rule 59(a) motion "is within the trial court's broad discretion." *Toutant v. Crown Equip. Corp.*, No. 01 C 1194, 2004 WL 2271819, at *1 (N.D. Ill. Oct. 6, 2004) (citing *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004)).

Plaintiff also seeks relief under Rule 60(b)(3) on the grounds that Defense counsel allegedly committed misconduct, misrepresentation, and possibly fraud. *See* Fed. R. Civ. P. 60(b)(3). A party seeking relief under Rule 60(b)(3) must prove by clear and convincing evidence that "(1) the party maintained a meritorious claim . . . and (2) because of the fraud, misrepresentation or misconduct of the adverse party[] (3) the party was prevented from fully and fairly presenting its case[.]" *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995); *Kaplan v. City of Chi.*, No. 05 C 2001, 2009 WL 1940789, at *2 (N.D. Ill. July 6, 2009).

The basis for Plaintiff's motion is Defense counsel's use of a photograph depicting the location of Plainitiff's arrest and search during closing arguments. Plaintiff contends that he was "severely prejudiced by Defendants' attorney's argument that an exhibit, a photo, conflicted with Plaintiff's testimony." (Dkt. No. 169 at 4.) He argues that the photograph "had never been introduced into evidence, had never been authenticated, and had never once been disclosed in the

course of litigation." (*Id*.) Furthermore, Plaintiff contends that Defense counsel intentionally misrepresented the purposes for which she planned to use the photograph. Although Defense counsel had told Plaintiff's counsel that she planned to use the photograph in closing arguments, Plaintiff says that Defense counsel "claimed that she planned to use this photo only to 'set the scene'[.]" (*Id.* at 7.) Instead, Defense counsel relied upon the photograph to attempt to undermine Plaintiff's credibility. (*Id.* at 6–7.)

Relying on *Lonsdorf*, Plaintiff asserts that defense counsel's alleged misconduct rendered the trial unfair. (*Id.* at 4–8.) In *Lonsdorf*, a defendant in a sexual harassment case fraudulently altered a document and presented it to his attorney. 47 F.3d at 897. Unaware that the document had been altered, the attorney presented the document as evidence and relied upon it in his closing argument to challenge the plaintiff's credibility. *Id.* The plaintiff was not present for the closing argument on advice of her therapist. *Id.* at 896. The Seventh Circuit found that the plaintiff "was unfairly prejudiced by the closing argument . . . because it was based, in part, on the altered [document]." *Id*. at 898. As a result, the Seventh Circuit granted the plaintiff a new trial. Plaintiff argues that he is entitled to the same in this case.

We disagree for several reasons. First, Plaintiff failed to object to Defense counsel's use of the photograph at the relevant time for doing so—that is, during closing arguments. *See Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 298 (7th Cir. 1985) (holding that the relevant time for objecting to "immoderate" comments during closing argument was "at the time the immoderate comments were made"); *Houskins v. Sheahan*, 549 F.3d 480, 494 (7th Cir. 2008) (holding that a plaintiff waived his objection to statements in defense counsel's closing argument by "fail[ing] to object to the statements at the time they were made"). Plaintiff's counsel

attempts to explain away her failure to object by stating that "no objection, even if sustained could have cured the misrepresentation, the fraud and the misconduct that was occurring." (Dkt. No. 169 at 3.) But perceived futility is no excuse. Plaintiff's counsel herself admitted on the record that "it [was] my mistake for not objecting to [the photograph] at that time." (11/19/10 12 p.m. Trial Tr. at 3.) This situation is thus different from the fraudulent tampering in *Lonsdorf* because the alleged misconduct—Defense counsel's improper reliance on the photograph as evidence—was readily apparent during closing argument. Thus, Plaintiff's counsel had an obligation to object but failed to do so.

Furthermore, Plaintiff's counsel was able to challenge Defense counsel's reliance on the photograph in her rebuttal argument. As she stated:

> Now, ask yourselves why the defense attorneys didn't ask [Plaintiff] about this [photograph] on the stand . . . And the answer is because they know it shows nothing. They wanted to wait until now when they can make something up. [Defense counsel] could have asked [Plaintiff] about it on the stand, pointed it out to you when the evidence was going on, which is not now. Now is argument, not evidence. But they chose not to because they know it's nothing.

(11/19/10 10 a.m. Trial Tr. at 10.) Thus, even if Defense counsel's use of the photograph was improper, Plaintiff's counsel was able to mitigate any unfair prejudice by reminding the jury that the photograph was "argument, not evidence." *Id.* This case is thus noticeably different from *Lonsdorf*, where the plaintiff's attorney lacked any such opportunity to address the misconduct before the jury. 47 F.3d at 896.

Despite Plaintiff counsel's failure to timely object to the photograph, we also had the opportunity to curtail any prejudice resulting from Defense counsel's improper use of the photograph. When the jury requested the photograph during their deliberations, we instructed them that "[t]hat picture is not in evidence" and that, as a result, "[the Court] cannot give it to

you [the jury]." The jury was also reminded that the photograph had been used for "demonstrative purposes." (11/19/10 12 p.m. Trial Tr. at 5.) We had also previously instructed the jury that "the lawyers' opening statements and closing arguments to you are not evidence" and ought not be considered as such. (Dkt. No. 161, Jury Instructions, at 5.) "Jurors are presumed to follow limiting instructions . . . and this presumption is only overcome if there is an 'overwhelming probability' that the jury was unable to follow the instruction as given." *Doe v. Johnson*, 52 F.3d 1448, 1458 (7th Cir. 1995) (citations omitted). Based on our direct charge to the jury not to treat the photograph as evidence, we must presume that the jury did not do so. Plaintiff has not carried his heavy burden of overcoming this presumption. Accordingly, assuming, arguendo, that Defense counsel's use of the photograph was improper, Plaintiff has not shown that he "was prevented from fully and fairly presenting [his] case" as a result of this impropriety.[8] *Lonsdorf*, 47 F.3d at 897.

Finally, there was ample evidence besides the photograph upon which the jury could have reached the verdict it did. Specifically, both officers Stinar and Glines testified that they did not search Plaintiff's car in the overly aggressive manner alleged. In a case like this one, which involves highly disputed facts surrounding the simple issue of whether the search of Plaintiff's car was reasonable, the jury's decision to rely on this testimony deserves considerable deference. *Latino*, 58 F.3d at 314. We therefore hold that the verdict is not "against the weight of the evidence" and Plaintiff is not entitled to a new trial. *Kapelanski*, 390 F.3d at 530.

---

[8] We caution Defense counsel not to interpret our refusal to grant Plaintiff a new trial as an endorsement of her behavior. In the future, she ought to hew much further from the line of appearing to introduce new evidence in her closing argument.

## III. CONCLUSION

Plaintiff's motion to reconsider our February 1, 2010 summary judgment order is denied. Plaintiff's motion for relief from the final judgment entered on November 19, 2010 and for a new trial is also denied.

IT IS SO ORDERED.

/s/ Marvin E. Aspen
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: June 20, 2011